## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

**CRYSTAL MEBANE MCGINTY** ("**MCGINTY**"), age 59, is a resident of Silver Spring, Maryland. At all relevant times, **MCGINTY** worked as a physician at various practices in the State of Maryland and the District of Columbia.

From in or about June 2005 through in or about June 2018, **MCGINTY** engaged in a scheme to commit mail fraud and theft of government property by means of materially false and fraudulent pretenses. In the scheme, **MCGINTY** spent her deceased mother's Social Security Administration ("SSA") Retirement Insurance Benefits ("RIB") payments and Teachers' Retirement System of the City of New York ("TRSCNY") pension payments and failed to disclose and concealed her mother's death from SSA and TRSCNY, in part, by posing as her deceased mother.

**MCGINTY's** mother, Individual 1, died on or about June 17, 2005, and her death certificate names **MCGINTY** as the informant. In or about the year 2016, SSA suspected that Individual 1 was deceased, but was still receiving RIB payments by direct deposit into an account titled in the names of **MCGINTY**, Individual 1, and Individual 1's deceased husband.

On or about January 9, 2017, agents of SSA's Office of Inspector General met with **MCGINTY** at the health clinic at which she worked. **MCGINTY** was evasive in responding to questions regarding whether her mother was alive, and ultimately falsely stated that her mother was alive, "as far as she [knew]." **MCGINTY** acknowledged that she used the joint account into which SSA benefits were deposited, but falsely denied spending any of Individual 1's SSA benefits. **MCGINTY** admitted that she received and purposefully failed to respond to SSA notices mailed to her address requesting that she contact SSA.

Agents learned through their investigation that **MCGINTY** was also depositing her mother's TRSCNY pension checks into the joint checking account, which were sent to **MCGINTY's** home each month by United States Mail. Before depositing the checks, **MCGINTY** endorsed the checks as herself, and then countersigned them as Individual 1.

TRSCNY records show that **MCGINTY** submitted to TRSCNY several "proof of life" forms, from 2012 to 2017, attesting that Individual 1 was still alive, and on which **MCGINTY** forged Individual 1's signature, and also signed the documents as Individual 1's attesting physician. TRSCNY records also indicate that on or about May 31, 2016, **MCGINTY** contacted the TRSCNY customer service hotline and identified herself as Individual 1, and provided Individual 1's partial social security number and date of birth for identification purposes. **MCGINTY** contacted TRSCNY because it had ceased mailing Individual 1's pension checks,

and **MCGINTY** sought to have the payments reinstated.

In total, **MCGINTY** spent approximately $304,000 in funds belonging to TRSCNY and $213,000 in funds belonging to SSA. **MCGINTY** often withdrew the funds as cash or transferred them to her personal accounts each month, and also spent the funds on expenses such as the mortgage and utilities for her Silver Spring home, renewal of her medical license, department store purchases, cruise tickets, airfare to the island of St. Thomas, and tuition for a private high school located in Washington, DC.

SO STIPULATED:

_____
Michael F. Davio
Special Assistant United States Attorney

_____
Crystal Mebane McGinty
Defendant

_____
Megan E. Coleman, Esq.
Counsel for Defendant